The main opinion holds, in essence, that the plaintiff's paperwork put her on notice that, although American General had represented a 20% interest rate to the plaintiff, American General was charging the plaintiff several percentage points more interest, and the main opinion observes that the plaintiff received this paperwork much more than two years before she filed her lawsuit. This dissent will demonstrate that the paperwork did not put her on notice of the disparity between the interest rate represented and the interest rate actually charged and that only an event less than two years before she filed the lawsuit alerted her to the disparity. *Page 692 
As the main opinion explains, American General made a series of five loans to the plaintiff. None of the debts for any of these loans is evidenced by a promissory note. Instead, each loan is memorialized by two documents — a "Settlement Statement" and "A Partial Assignment of Promissory Note and Mortgage." American General used the same preprinted "Settlement Statement" form and the same "A Partial Assignment of Promissory Note and Mortgage" form for all five loans. Only the entries in the blanks in the forms differ from loan to loan.
The reference to a promissory note in the "A Partial Assignment of Promissory Note and Mortgage" form is a reference to the note made by the Sherrins to the plaintiff, not a reference to any note made by the plaintiff to American General. I repeat that American General did not use any promissory note to evidence the plaintiff's debt to American General.
I attach as Exhibit A to this dissent copies of the paperwork memorializing the first loan and as Exhibit B copies of the paperwork memorializing the fifth and the last loan as fair samples of what the plaintiff received to put her on notice or not to put her on notice. While the paperwork recites the Sherrins' 10% interest rate, nowhere does the paperwork recite any rate for the interest being charged the plaintiff. Likewise, none of the documents supplied by American General to the plaintiff identifies any entry as either the payoff balance or the new amount of any of the successive loans by American General to the plaintiff. I respectfully challenge the reader to calculate from the data entered in the paperwork for each loan what interest rate American General was charging the plaintiff. Those readers who are mathematicians, bankers, or accountants may accomplish the feat.
The issue is, though, whether, as a matter of law, this paperwork put the plaintiff, as a layperson, on notice of the disparity between the 20% interest rate represented by American General and the several-points-higher interest rate actually charged the plaintiff by American General. Surely not.
The event which alerted the plaintiff that "something was wrong" did not occur until December 1995, less than two years before the August 7, 1996, date when the plaintiff filed her action against the defendants. This event was American General's employee Ms. Skipper's report to the plaintiff of not only the payoff balance of the Sherrins' debt to the plaintiff but also the payoff balance of the plaintiff's own debt to American General. Only this newly acquired information suggested a disparity — a disparity between and among the great amount still owed by the plaintiff to American General, the amount already received by American General from Sherrins' payments, and the 20% interest rate previously represented to the plaintiff by American General. Even so, the plaintiff needed the services of an accountant analyzing her paperwork to learn that her suspicions were valid.
The most critical part of Ms. Skipper's report to the plaintiff, the balance of the plaintiff's own debt owed to American General, was new information to the plaintiff when she received it from Ms. Skipper in December 1995. The plaintiff could not have calculated her own balance owed to American General by simply subtracting from her original debt to American General the total it would have received in Sherrin mortgage payments over the intervening months inasmuch as the plaintiff's own debt over the same period would have been supplemented by the interest accruing at whatever rate American General was actually charging the plaintiff. Moreover, the plaintiff could not know what American General would claim the plaintiff's *Page 693 
unpaid balance to be until Ms. Skipper told the plaintiff in December 1995.
Because the loan paperwork, by itself, did not reveal the "facts that would have alerted a reasonable person to the existence of a potential fraud," McGowan v. Chrysler Corp., 631 So.2d 842, 845 (Ala. 1993) (emphasis omitted), and because the plaintiff did not learn such facts until she received the report from Ms. Skipper less than two years before the plaintiff filed her civil action, it was not barred by the statute of limitations. Thus, I respectfully submit we should affirm the Court of Civil Appeals in its reversal of the partial summary judgment entered by the trial court in favor of the defendants.
Cook, J., concurs. *Page 694